Robert E. Byrnes (SBN 200761)
RByrnes@InitiativeLegal.com
Payam Shahian (SBN 228406)
PShahian@InitiativeLegal.com
Linh Hua (SBN 247419)
LHua@Initiativelegal.com
Sara Adibisedeh (SBN 244778)
SAdibisedeh@Initiativelegal.com
Initiative Legal Group, APC
1800 Century Park East, 2nd Floor
Los Angeles, California 90067
Telephone: (310) 556-5637
Facsimile: (310) 861-9051

Attorneys for Plaintiff Ryan Mathias

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA—SACRAMENTO DIVISION

| | |
|---|---|
| RYAN MATHIAS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SMOKING EVERYWHERE, INC., a Florida Corporation,<br><br>Defendant. | Case No.: 2:09-CV-03434-GEB-JFM<br><br>**CLASS ACTION FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND RESTITUTION**<br><br>**DEMAND FOR JURY TRIAL** |

1. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Plaintiff alleges, on information and belief, that the aggregate amount in controversy for this class action exceeds five million dollars ($5,000,000.00) exclusive of interest and costs, that the class is greater than one-hundred (100) members, and that any one plaintiff is a citizen of a state different from that of any defendant. *See* Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453.

2. Venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) because Defendant transacts business in this judicial district, and certain acts giving rise to the claims asserted in this Complaint occurred within this District.

## THE PARTIES

3. Plaintiff RYAN MATHIAS ("Plaintiff") is a resident of Placer County in the State of California.

4. Defendant SMOKING EVERYWHERE, INC. ("Defendant") was and is, upon information and belief, a Florida corporation doing business in California.

5. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to Defendant. The acts of Defendant were in accordance with, and represent the official policies of, Defendant.

6. Plaintiff is informed and believes, and thereon alleges, that Defendant is responsible for the acts, omissions, occurrences, and transactions alleged herein.

## CLASS ACTION ALLEGATIONS

7. Plaintiff brings this action on his own behalf, as well as on behalf of each and all other persons similarly situated, and thus, seeks class certification

under Federal Rules of Civil Procedure, Rules 23(a), (b)(2), and/or (b)(3).

8. All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

9. Plaintiff's proposed class consists of and is defined as:

> All California residents who purchased any of Smoking Everywhere, Inc.'s electronic cigarette products within four years prior to the filing of this complaint until the date of certification.

10. Plaintiff reserves the right to establish sub-classes as appropriate.

11. There is a well-defined community of interest in the litigation and the class is readily ascertainable:

    a. <u>Numerosity</u>: The members of the class (and each subclass, if any) are so numerous that joinder of all members would be unfeasible and impractical. The membership of the entire class is unknown to Plaintiff at this time, however, the class is estimated to be greater than one-hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's employment records.

    b. <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all class members' as demonstrated herein.

    c. <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately, protect the interests of each class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any class

member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each class member.

    d.  <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. Class action will achieve economies of time, effort and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

12. There are common questions of law and fact as to the class (and each subclass, if any) that predominate over questions affecting only individual members, including but not limited to:

    a.  Whether Defendant engaged in unfair business practices in violation of California Business & Professions Code sections 17200, et seq.;

    b.  Whether Defendant engaged in unlawful, unfair, misleading or deceptive business acts or practices;

    c.  Whether Defendant engaged in consumer fraud, deceptive trade practices, or other unlawful acts;

    d.  Whether Defendant misrepresented the safety of electronic cigarettes ("e-cigarettes");

    e.  Whether Defendant failed to warn of the health risks of e-cigarettes;

    f.  Whether Plaintiff and class members are entitled to injunctive

FIRST AMENDED COMPLAINT

          relief enjoining Defendant from continuing to represent that e-cigarettes are healthy and safe;

    g.    Whether Defendant should be made to engage in an advertising campaign warning of the harmful chemicals and dangers associated with use of e-cigarettes;

    h.    Whether Plaintiff and class members are entitled to restitution of the monies they paid to purchase the e-cigarettes and disgorgement of the profits Defendant received from sales of e-cigarettes;

    i.    Whether Defendant's conduct was willful or reckless;

    j.    Whether Defendant had a duty to Plaintiff and the Class to disclose the material information about the e-cigarettes; and

    k.    Whether Defendant's concealment of and/or failure to disclose material facts about e-cigarettes induced Plaintiff and the Class to act to their detriment by purchasing the items.

## GENERAL ALLEGATIONS

13. Defendant sells e-cigarettes in the United States. An e-cigarette is a battery-operated device that contains a cartridge filled with nicotine and other chemicals which turn into a vapor to be inhaled by the user. A person inhales vapors from the e-cigarette as he or she would inhale smoke from a normal cigarette. When the liquid in the cartridge has been depleted, it can either be refilled by the user or replaced with another pre-filled cartridge. E-cigarettes are designed to look like and be used in the same manner as conventional cigarettes.

14. Defendant represents its product as a "healthy" cigarette, free of harmful chemicals and tar usually found in tobacco products.

15. Defendant's website describes e-cigarettes in positive terms:

> "Smoking Everywhere E-Cig[arettes] will provide smokers an experience similar to smoking a traditional cigarette without the fire, flame, tobacco, tar, carbon

monoxide, ash, stub, or smell found in real cigarettes. The main reasons people use Smoking Everywhere ECigarette include: a tar-free way to smoke, freedom to smoke anywhere and everywhere, does not create first or second hand smoke, no smoke or tobacco odor, non-flammable, convenient an cheaper than traditional cigarettes." (SmokingEverywhere.com, What is an Electronic Cigarette (E Cigarette), http://www.smokingeverywhere.com/whatisit.php (last visited, November 6, 2009).

16. According to Defendant, e-cigarettes contain no toxins or carcinogens and pose no health risks. The first question in the "frequently asked questions" section of Defendant's website addresses safety concerns:

"Is Smoking Everywhere Electronic Cigarette safe?

Smoking Everywhere E-Cigarette contains only water, propylene glycol, nicotine, and a scent that imitates tobacco flavor. Smoking Everywhere E-Cigarette has been tested and the cartridges have been toxicologically tested and it contains no known ingredients are considered cancer-causing agents." (SmokingEverywhere.com, Smoking Everywhere FAQ's, http://www.smokingeverywhere.com /faqs.php (last visited, November 6, 2009).

17. Defendant's website describes e-cigarettes as being benign compared to regular cigarettes:

"Smoking Everywhere E-Cig offers smokers a tar-free way to enjoy smoking: Smoking Everywhere E-Cigarette has no tobacco, no tar, no real smoke and no other chemicals like traditional cigarettes that are known to cause lung cancer." (Smoking Everywhere.com, http://www.smoking everywhere.com/healthier.php (last visited, November 6, 2009)).

18. Elicko Taieb, CEO of Smoking Everywhere, stated, "There are no ingredients in our e-cigs that can cause cancer. However, it is a pretty new product, so we are not 100 percent sure of the side effects at this point." Taib continued, "But we haven't heard of any negative side effects yet, but we are pretty sure they are safe." *See* http://edition.cnn.com/2009/HEALTH/03/13/ecigarettes.smoking/index.html (last visited November 4, 2009).

19. In addition to its safety assurances, Defendant represents on its e-

Page 5

FIRST AMENDED COMPLAINT

cigarette packages that "Smoking Everywhere E-Cigarette is simply a healthier alternative to traditional smoking." Defendant also suggests that e-cigarettes are "healthy" by selling vitamin infused cartridges. Consumers can buy cartridges with "Vitamin B," "Vitamin D," or even a "multi-vitamin" cartridge.

20. Although represented to be safe and healthy, Defendant labels and warns that the e-cigarettes as "intended for use by adults." Yet, Defendant has designed the e-cigarettes to appeal to minors, marketing the e-cigarettes in flavors appealing to minors, including apple, cherry, strawberry and chocolate flavors. Defendant sells the e-cigarettes from its website, www.smokingeverywhere.com, and locations throughout the United States, including shopping malls kiosks.

21. Dr. Margaret A. Hamburg, commissioner of the FDA, stated, "The FDA is concerned about the safety of these products and how they are marketed to the public." *See* http://www.cnn.com/2009/HEALTH/07/22/ecigarettes.fda/index. html (last visited November 6, 2009).

22. In July 2009, the U.S. Food and Drug Administration ("FDA") announced that tests on electronic cigarettes found they contain carcinogens and other toxic chemicals dangerous to humans. *See* http://www.cnn.com /2009/HEALTH/07/22/ecigarettes.fda/index.html (last visited November 6, 2009).

23. Information on the FDA's website note numerous concerns voiced by public health experts:

> "Makers and retailers of these products have been making unproven health claims about their products, claiming that they are safer than normal cigarettes and asserting that they can help people to quit smoking. Absent scientific evidence, these claims are in blatant violation of FDA rules. In fact, no studies have been done on e-cigarettes to date regarding their health effects or their effectiveness as cessation aids."

Statement of the American Cancer Society Cancer Action Network, American Heart Association, American Lung Association, and Campaign for Tobacco-Free

Kids, March 24, 2009, http://www.fda.gov/NewsEvents/ PublicHealthFocus/ ucm173175.htm (last visited November 6, 2009).

24. On July 22, 2009, the FDA held a press conference warning of the potential health risks posed by the use of e-cigarettes. The FDA and representatives from the Office on Smoking and Health at the Centers for Disease Control and Prevention, the American Academy of Pediatrics Tobacco Consortium, and the University of Southern California Institute for Global Health, warned that e-cigarettes, including those sold by Defendant, contain known human carcinogens and other tobacco specific impurities harmful to humans, lack verifiable substantiation for represented health benefits, exhibit material variability from the amount of nicotine represented to be delivered due to a lack of product quality control, and are sold without legal age restrictions. (FTS-HHS FDA, *Transcript for FDA's Media Briefing on Electronic Cigarettes*, http://www.fda.gov/downloads/NewsEvents/Newsroom/MediaTranscripts/UCM 173405.pdf (last visited, November 6, 2009)).

25. The FDA analyzed the ingredients in two brands of e-cigarettes, including the Smoking Everywhere brand. In one sample, diethylene glycol, a toxic chemical used in antifreeze, was detected. Other samples had dangerous carcinogens. *See* http://www.fda.gov/forconsumers/consumerupdates /ucm173401.htm (last visited November 6, 2009).

26. The FDA's Center for Drug Evaluation, Division of Pharmaceutical Analysis (DPA) analyzed the e-cigarette samples, and found the product contained detectable levels of known carcinogens and toxic chemicals. *See* http://www.fda.gov/ NewsEvents/PublicHealthFocus/ucm173146.htm (last visited November 17, 2009).

27. Thus, Defendant's e-cigarettes are potentially as toxic, as carcinogenic, and as unhealthy as traditional cigarettes.

28. Therefore, the e-cigarettes are unreasonably dangerous because they

contain some of the same impurities and the same cancer-causing agents as traditional cigarettes.

29.     Defendant knew or should have known that the e-cigarettes are unreasonably dangerous, harmful and/or contain toxins, carcinogens or other harmful chemicals and nicotine levels that vary from the labeled amounts. Nevertheless, Defendant failed to disclose and actively concealed this fact from Plaintiff and class members at the time of purchase and thereafter.  Had Plaintiff and class members known that the e-cigarettes are unreasonably dangerous, harmful and/or contain toxins, carcinogens or other harmful chemicals and nicotine levels that vary from labelled amounts, they would not have purchased the e-cigarettes or would have paid a lesser price for them.

30.     On Defendant had access to information about the significant health risks posed by smoking E-cigarettes through its internal testing, consumer complaints, FDA investigations and/or inquiries, as well as other sources of aggregate information.   Through these sources Defendant also knew that the e-cigarettes are unreasonably dangerous, harmful and/or contain toxins, carcinogens or other harmful chemicals and nicotine levels that vary from the labeled amounts, but failed to disclose this fact to consumers at the time of purchase and thereafter.   Had Plaintiff and class members known that the e-cigarettes are unreasonably dangerous, harmful and/or contain toxins, carcinogens or other harmful chemicals and nicotine levels that vary from labelled amounts, they would not have purchased the e-cigarettes or would have paid a lesser price for them.

31.     Therefore, Plaintiff and thousands of other consumers have purchased Defendant's e-cigarettes.  They have purchased Defendant's e-cigarettes with no disclosure or warning from Defendant that the e-cigarettes are harmful and/or contain toxins, carcinogens, other harmful chemicals and nicotine levels that vary from labeled amounts.

1  32. Even though as the importer, marketer and distributor of the e-cigarettes Defendant knew, or should have known, that its e-cigarettes contained the same toxins and carcinogens that conventional cigarettes contain, Defendant misleads consumers by affirmatively representing on its e-cigarette packages, its website, and other advertising materials and media that its e-cigarettes are safe and healthy. As a result, Plaintiff and other purchasers of the e-cigarettes have been harmed in the amount they paid to purchase the e-cigarettes.

33. Defendant, in contrast, has profited from its misrepresentations and material omissions to Plaintiff and other purchasers.

34. In or around November 2008, Plaintiff Ryan Mathias purchased a "Smoking Everywhere" e-cigarette device for approximately $150.00. Plaintiff also purchased additional cartridges and a vaporizer for approximately $100.00.

35. Plaintiff read the representations on the packaging of the device he purchased, including, among other things, the representation that because e-cigarettes are smoke-free, they do not contain the harmful chemicals found in tobacco smoke. Plaintiff reasonably relied on Defendant's representations because Defendant represented that the e-cigarettes had been scientifically tested and determined to be free from harmful chemicals.

36. Plaintiff used the Smoking Everywhere e-cigarette as directed by Defendant.

37. In or around March 2009, Plaintiff discontinued use of the e-cigarettes because he was experiencing various symptoms, including nausea, dizziness, and a persistent sore throat, resulting from his use of the e-cigarettes.

38. Plaintiff has suffered injury as a result of Defendant's alleged misconduct. He has been injured in the amount he paid for the e-cigarette device, cartridges and vaporizer.

# FIRST CAUSE OF ACTION

## Violation of the California Consumer Legal Remedies Act

### (Civil Code §§ 1750, et seq.)

39. Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 38.

40. By failing to disclose and concealing the harmful effects of e-cigarettes as alleged in this Complaint, Defendant violated Civil Code section 1770(a), as Defendant represented that its e-cigarettes have characteristics and benefits they do not have and represented that its e-cigarettes were of a particular standard, quality, or grade when they were of another. (See Civ. Code §§ 1770(a)(5,7).)

41. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed serious health risk on the public.

42. Defendant knew that that its e-cigarettes were harmful and not suitable for their intended use.

43. Defendant was under a duty to Plaintiff and the prospective class members to close the true nature of the e-cigarettes because:

   (a) Defendant was in a superior position to know the true state of the facts about the inherent health risks that can result from smoking e-cigarettes;

   (b) Plaintiff and the prospective class members could not reasonably have been expected to learn or discover the inherent health risks that can result from smoking e-cigarettes until after they purchased the product; and,

   (c) Defendant knew that Plaintiff and the prospective class members could not reasonably have been expected to learn or

discover the health risks that can result from using e-cigarettes.

44. In failing to disclose the inherent health risks, including the fact that e-cigarettes are harmful, Defendant has knowingly and intentionally concealed material facts and breached its duty not do so.

45. The facts concealed or not disclosed by Defendant to Plaintiff and the prospective class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase Defendant's e-cigarettes or pay a lesser price for them.  Had Plaintiff and the prospective class members known about the inherent health risk that can result from smoking e-cigarettes, they would not have purchased them or would have paid less for them.

46. Plaintiff and the prospective class members reasonably expected that e-cigarettes are not harmful.  This is the reasonable and objective consumer expectation for e-cigarette consumers.

47. As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and the prospective class members have suffered and will continue to suffer actual damages.

48. Plaintiff and the class are entitled to eligible and injunctive relief.

49. Pursuant to California Civil Code section 1782(a), Plaintiff has provided Defendant with notice of Defendant's alleged violations of the CLRA. Notice was provided in writing, sent by certified mail with return receipt requested on December 1, 2009, and notice was received by Defendant on December 5, 2009.  More than 30 days have passed since Defendant has received Plaintiff's notice, and no appropriate correction, repair, replacement, or other remedy was given or agreed to be given within a reasonable time to Plaintiff. Therefore, Plaintiff may commence an action for damages, injunctive relief, and other remedies pursuant to the California Consumers Legal Remedies Act.

## SECOND CAUSE OF ACTION

## Violation of Unfair Business Practices Act

### (California Business & Professions Code Sections 17200, et seq.)

50. Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 49.

51. Defendant's conduct, as alleged herein, has been, and continues to be, unfair, unlawful, and harmful to Plaintiff, other class members, and to the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

52. Defendant's activities, as alleged herein, are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code sections 17200, et seq.

53. Defendant violated California Business & Professions Code sections 17200, et seq.'s prohibition against engaging in an "unlawful" business act or practice, by, among other things, misrepresenting on its e-cigarette packages, on its website, and in other marketing materials and media that e-cigarettes are safe and healthy, and that scientific tests have shown that the e-cigarettes do not contain the toxins and carcinogens found in traditional cigarettes.

54. Defendant also violated California Business & Professions Code sections 17200, et seq.'s prohibition against engaging in an "unfair" business act or practice by, among other things, misrepresenting on its e-cigarette packages, on its website, and in other marketing materials and media that its e-cigarettes are safe and healthy and do not contain the toxins and carcinogens found in traditional cigarettes. Defendant engaged in its deceptive marketing campaign to, among other things, gain an unfair competitive advantage over other manufacturers and distributors of smoking cessation and nicotine replacement products, who did not engage in similar misleading advertising practices.

55. Defendant's business practices are unscrupulous, unethical and

injurious to consumers. There is no legitimate business reason for Defendant's business practices and thus the utility of Defendant's business practices does not outweigh the harm to consumers. Additionally, Defendant's conduct caused, and continues to cause, substantial injury to consumers. Defendant's business practices violate California's fundamental policy against unfair business practices that are likely to deceive or mislead consumers.

56. Defendant's conduct also violates California Business & Profession Code sections 17200, et seq.'s prohibitions against "fraudulent" or deceptive business practices. Defendant's misrepresentations on its e-cigarette packages, on its website, and in other marketing materials and media that its e-cigarettes are safe and healthy, and its failure to disclose that its e-cigarettes contain toxins, carcinogens, other harmful chemicals and nicotine levels that vary from labeled amounts are likely to and, in fact, did deceive reasonable consumers, including Plaintiff.

57. Plaintiff has been personally injured by Defendant's unlawful, unfair, deceptive and fraudulent business acts and practices as alleged herein, including but not limited to the loss of money or property.

58. As a result of Defendant's violations of California Business & Profession Code sections 17200, et seq. Plaintiff and class members are entitled to damages in an amount to be proven at trial, and equitable relief in the form of full restitution of all monies paid for Defendant's e-cigarettes and disgorgement of Defendant's profits from sales of the e-cigarettes.

59. Plaintiff and class members also are entitled to an award of injunctive relief enjoining Defendant from continuing to represent that the e-cigarettes are safe and healthy, and an order requiring Defendant to engage in an advertising campaign that includes prominent disclosure that e-cigarettes contain toxins, carcinogens, other harmful chemicals and nicotine levels that vary from labelled amounts.

60. Pursuant to California Business & Professions Code sections 17200, et seq., Plaintiff and putative class members are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

61. Plaintiff reserves the right to allege additional violations of law which constitute additional unlawful, unfair or fraudulent business acts or practices.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

Plaintiff, and on behalf of all others similarly situated, requests the Court enter judgment against Defendant, as follows:

1. An order certifying the proposed Plaintiff Class, designating Plaintiff as named representative of the Class and designating the undersigned as Class Counsel;

2. A declaration that Defendant is financially responsible for notifying all Class Members of the inherent health risks that can arise from using e-cigarettes;

3. An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to its e-cigarettes;

4. An award to Plaintiff and the Class of compensatory, exemplary and statutory damages, including interest, in an amount to be proven at trial

5. Equitable and injunctive relief with respect to Plaintiff's claims under the California's Consumers Legal Remedies Act, California Civil Code sections 1750, *et seq.*;

6. A declaration that Defendant must disgorge, for the benefit of the Class, all or part of ill-gotten profits it received from the sale or lease of its e-cigarettes, or to make full restitution to Plaintiff and members of the Class;

1    7.   An award of attorneys' fees and costs, as allowed by law;

2    8.   An award of pre-judgment and post-judgment interest, as provided

3 by law;

4    9.   Leave to amend the Complaint to conform to the evidence produced

5 at trial; and,

6    10.  Such other or further relief as may be appropriate under the

7 circumstances.

9 Dated:  January 13, 2010            Respectfully submitted,

10                                     Initiative Legal Group, APC

12                                     By:   /s/ Linh Hua
                                             Robert E. Byrnes
13                                           Payam Shahian
                                             Linh Hua

15                                     Attorneys for Plaintiff Ryan Mathias